JUDGE KATHLEEN CARDONE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED

2022 AUG 15  PM 1: 17

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
         DEPUTY

ERIK SALAIZ,

§
§
§
§
**Plaintiff,**       §
§
§
v.            §
§
**GUARDIAN TAX NETWORK INC.,**    §
a California Corporation       §
§
§
§
**Defendants.**     §
§

EP22CV0279

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all automated text messages, in this case in El

Paso County, Texas.

2.      Defendant GUARDIAN TAX NETWORK INC. ("Guardian" "Defendant") is a

Corporation organized and existing under the laws of California with its principal place of

business at 30 Executive Park Suite 250, Irvine, CA 92614 and can be served via registered agent

Legalinc Registered Agents, Inc. at Four Embarcadero Center, Suite 1400 #85, San Francisco,

CA  94111.

**NATURE OF ACTION**

3.      Plaintiff brings this Complaint and Demand for Jury Trial against Defendant to stop

placing illegal unauthorized calls to Plaintiff's personal cell phone and to obtain redress as

authorized by statute.

4.      Defendant offers tax debt relief services to consumers.  As part of marketing their services, Defendant Guardian and their agents placed illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

5.      Defendant Guardian makes unsolicited and unauthorized phone calls to thousands of consumers using and ATDS to solicit and sell their services.

6.      Defendant Guardian did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendant is therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

7.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.      The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant Guardian's use of technological equipment to spam consumers on a grand scale without their consent.

9.      By placing the calls at issue, Defendant Guardian has violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

10.     Plaintiff therefore seeks an injunction requiring Defendant Guardian to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

11.    This court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12.    This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendants telemarketing unauthorized phone calls to Plaintiff;

adds little complexity to the case; and doesn't seek money damages, so it is unlikely to

predominate over the TCPA claims.

13.    This Court has personal jurisdiction over Defendant Guardian because they conduct

business in this District and in the State of Texas and because the events giving rise to this

lawsuit occurred in this District.

14.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant

Guardian regularly conducts business in the state of Texas and in this District, and because the

wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

15.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

16.    The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

3

telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

24.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

25.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

26.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

27.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

28.     Plaintiff's personal cell phone (915) 929-1527 has been registered on the National Do-Not-Call Registry since March 6, 2022.

29.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

30.     Defendant Guardian offers tax debt relief services to consumers who owe federal back taxes to the IRS.

31.     Defendant Guardian hires and authorizes third party telemarketers to make illegal unauthorized phone calls to thousands of consumers en mass by using an ATDS to solicit "tax relief services" on behalf of Defendant Guardian.

32.     Defendant Guardian approves of the contracts with the telemarketers.

33.     Defendant Guardian authorizes the payments to the telemarketers.

34.     Defendant Guardian pays the telemarketers out of bank accounts they owns and control.

35.     Defendant Guardian provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

36.     Defendant Guardian has full control over their telemarketers who solicit on their and has the authority to stop the illegal phone calls that violate the TCPA however has refused to do so because violating the TCPA benefits Defendant Guardian financially.

37.    Defendant Guardian trains their telemarketers to say they are calling from "tax relief services" in order to hide their true identity and duck liability from violating the TCPA.

38.    Plaintiff received at least five (5) illegal unauthorized phone calls ("the calls") within a thirty-day period from telemarketers calling on behalf of Defendant Guardian soliciting their tax debt relief services.

39.    Plaintiff received at least one (1) unauthorized phone call directly from one of Defendant Guardian's agents.

40.    Each and every phone call Plaintiff received from Defendant Guardian's telemarketers started with a 3-4 second delay followed by an audible beep indicating the calls were being made using an ATDS.

41.    On July 12, 2022, Plaintiff received one of multiple illegal unauthorized phone calls to his personal cell phone ending in 1527 from a telemarketer calling on behalf of Defendant Guardian.

42.    Plaintiff answered and there was a 3-4 second delay followed by an audible beep before being connected to a telemarketer named David who stated he was calling from "tax relief services."

43.    David advised Plaintiff that they were just reaching to let Plaintiff know he qualified for the "IRS fresh start program" and asked Plaintiff how much he owed to the IRS.

44.    Plaintiff was annoyed and frustrated for continuing to receive the same phone calls from telemarketers soliciting tax relief services and advised David he owed back taxes to the IRS for the sole purpose of identifying the company responsible for the calls.

45.    David advised Plaintiff the "IRS fresh start program" is designed to eliminate tax debt owed to the IRS.

46.     David then solicited Plaintiff for tax relief services on behalf of Defendant Guardian and stated, "What I'd like to do is bring on a senior settlement officer who can explain how our program can reduce or even eliminate that debt for you."

47.     David asked for Plaintiff's first name another indication the call was made using an ATDS and could have reached anyone in the United States.

48.     David then transferred Plaintiff to a representative from Defendant Guardian named Aaran Cleaver that stated he was with "tax relief services" and was a "senior settlement officer."

49.     Aaran went over their program with Plaintiff and advised Plaintiff they can help him with his tax debt.

50.     Aaran then solicited Plaintiff for tax relief services on behalf of Defendant Guardian and advised Plaintiff there would be an initial deposit of $595 for them to do the tax investigation phase.

51.     Plaintiff advised Aaran he was interested in their services for the sole purpose of identifying the company responsible for the calls.

52.     Aaran then asked Plaintiff a series of qualifying questions for their program and then advised Plaintiff he qualified for their program.

53.     Aaran advised Plaintiff they work in a two-phase process. The first phase is a "tax investigation" and the second phase is a "resolution."

54.     Plaintiff asked Aaran if they are local and Aaran advised Plaintiff they are in California.

55.     Plaintiff then advised Aaran that he resides in Texas and if they could still help him since he doesn't reside in California. Aaran stated, "of course."

56.     Aaran then emailed Plaintiff the "tax investigation" agreement for Plaintiff to review and sign. The "tax investigation" agreement revealed the true identity of the company responsible for the calls. *See Exhibit A.*

57.     Aaran was adamant about Plaintiff siging the agreement while on the phone with him. Plaintiff advised Aaran that his Wifi connection was slow and that he would review the agreement once he got home.

58.     Aaran asked what time would be good to call back Plaintiff to follow up. Plaintiff advised Aaran not to call him and that he would call Aaran back after reviewing the agreement and if he wanted to proceed with their tax relief services.

59.     Shortly after disconnecting the phone call with Aaran, Plaintiff received another email from Aaran from aaran@guardiantax.com with Defendant Guardian's BBB reviews. *See Exhibit B.*

60.     Later on, the same day July 12, 2022, Plaintiff received a call from Aaran asking if Plaintiff had reviewed the "tax investigation" agreement that he emailed to Plaintiff.

61.     Plaintiff advised Aaran that he was still at work and had already mentioned to Aaran that he would call him back if interested.

62.     Plaintiff emailed Aaran shortly after the call advising Aaran he was no longer interested. Aaran acknowledged Plaintiff's email. See Exhibit B.

63.     Despite Plaintiff's email to Aaran stating he was no longer interested, Plaintiff received two additional phone calls from Defendant Guardian's telemarketers on July 21, 2022, and August 9, 2022.

64.     Plaintiff is not and has never been a client of Defendant Guardian that would constitute any business relationship.

65.     Plaintiff never gave Defendant Guardian his prior express written consent to receive the calls.

66.     Defendant Guardian purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local. (830) is a Texas area code.

67.     Table below displays the calls made to Plaintiff from or on behalf of Defendant Guardian:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 07/01/2022 | 9:04 AM | 830-264-9492 | Telemarketer calling from "tax relief services" call disconnected. |
| **2.** | 07/07/2022 | 3:12 PM | 830-286-3704 | Telemarketer calling from "tax relief services" call disconnected. |
| **3.** | 07/12/2022 | 11:29 AM | 830-208-7222 | Telemarketer calling from "tax relief services" transferred to Aaran. Emailed agreement. |
| **4.** | 07/12/2022 | 3:06 PM | 657-262-6566 | Direct call from Aaran |
| **5.** | 07/21/2022 | 10:05 AM | 830-286-3709 | Telemarketer calling from "tax relief services" call disconnected. |
| **6.** | 08/09/2022 | 2:55 PM | 830-240-8233 | Telemarketer calling from "tax relief services" call disconnected. |

68.     Defendant Guardian employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

69.     The calls made on behalf of Defendant Guardian to Plaintiff's personal cell phone (915) 929-1527 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

70.     The calls Plaintiff received from or on behalf of Defendant Guardian were placed while knowingly ignoring the national do-not-call registry. The calls were placed without training their agents/employees on the use of an internal do-not-call policy.

71.     Plaintiff sent a request for Defendant Guardian's internal do not call policy on August 14, 2022, to support@guardiantax.com which is an email listed on the website they own and control https://guardiantax.com.

72.     On information and belief, Defendant Guardian did not have a written do-not-call policy while it was sending Plaintiff the calls.

73.     On information and belief, Defendant Guardian did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

74.     Defendant Guardian participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful telemarketing, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful telemarketing.

75.     Defendant Guardian refuses to take any action to stop or curtail the unlawful sales practices and illegal telemarketing because these practices benefit Defendant Guardian financially.

76.     Defendant Guardian does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

77.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Guardian's registration.

78.     Defendant Guardian doesn't qualify for an exemption under § 302.053.

79.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

## VICARIOUS LIABILITY OF DEFENDANT GUARDIAN

80.     Defendant Guardian is vicariously liable for the telemarketing calls that generated the lead for them.

81.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

82.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

83.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

84.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

85.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

86.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

87.    To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587
¶ 36.

88.     Vicarious liability is important because reputable, traceable, and solvent companies that
benefit from illegal telemarketing are "in the best position to monitor and police TCPA
compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

89.     Defendant Guardian is legally responsible for ensuring that the affiliates that make
telemarketing calls on its behalf comply with the TCPA when so doing.

90.     Defendant Guardian knowingly and actively accepted business that originated through
illegal telemarketing.

91.     Defendant Guardian knew (or reasonably should have known) that its telemarketer was
violating the TCPA on its behalf but failed to take effective steps within Guardian's power to
force the telemarketer to cease that conduct.

92.     By hiring a company to make calls on its behalf, Defendant Guardian "manifest[ed]
assent to another person . . . that the agent shall act on the principal's behalf and subject to the
principal's control" as described in the Restatement (Third) of Agency ("Restatement").

93.     Moreover, Defendant Guardian maintained interim control over the actions of its
telemarketers.

94.     For example, Defendant Guardian had absolute control over whether, and under what
circumstances, it would accept a customer from its telemarketers.

95.     Furthermore, Defendant Guardian had day-to-day control over the actions of its
telemarketers, including the ability to prohibit them from using an ATDS to contact potential
customers of Defendant Guardian and the ability to require them to respect the National Do Not
Call Registry.

96.     Defendant Guardian also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

97.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

98.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

99.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

100.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

101.    Defendant Guardian is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for tax debt relief services on behalf of Defendant Guardian.

**THE TEXAS BUSINESS AND COMMERCE CODE § 305.053**

102.     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

103.     The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

104.     The actions of the defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

105.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

106.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

107.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

108.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

109.    Plaintiff has been annoyed, harassed, and irritated by the calls placed from or on behalf of Defendant Guardian.

110.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing illegal phone calls.

## CAUSES OF ACTION

### First Cause of Action

### (Negligent Violations of the TCPA, "ATDS" Prohibition, 47 U.S.C. § 227(b) et seq.)

111.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

112.    Defendant called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least five (5) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

113.    As a result of Defendant and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for herself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

114.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

### (Knowing and/or Willful Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227(b) et seq.)

115.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

116.    Defendant called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least five (5) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

117.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above.

118.    As a result of Defendant and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3

119.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

### (Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

120.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

121.    Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

122.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

123.    As a result of Defendant and Defendants' agents' violations of 47 U.S.C. § 227(c)(3)(F),

and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and

every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

124.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Fourth Cause of Action

### (Knowing and/or Willful Violation of the TCPA
### "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

125.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

126.    Defendant called Plaintiff's private residential telephone number which was successfully

registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls,

in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

127.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by

the Defendant by the telephone calls described above, in the amount of $500.00 per call.

128.    As a result of Defendant and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble

damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47

U.S.C. § 227(c)(5).

### Fifth Cause of Action

### (Violations of The Texas Business and Commerce Code 305.053)

129.    Plaintiff incorporates the foregoing allegations as if set forth herein.

130.    The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute

multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-

emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

131.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

132.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

**Sixth Cause of Action**

**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**

133.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

113.    Defendants made at least six (6) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

114.    As a result of Defendant and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

115.    As a result of Defendant and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendant jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for five calls.

E.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for six calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.      Such further relief as the Court deems necessary, just, and proper.

August 15, 2022,                          Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com

JUDGE KATHLEEN CARDONE

Guardian Tax

EP 22 CV 0279

## Tax Investigation - Agreement

| Client Information | Date | Client | Fee |
|---|---|---|---|
| **Client Full Name:**<br>**Eric Salaiz D**<br><br>**Social Security No:**<br>**Date of Birth: 12/21/1986** | **7/12/2022** | **17068** | **$ 595.00** |

| | Client Phones | Spouse Phones |
|---|---|---|
| | Home:<br>Cell: (915)929-1527<br>Work:<br>Fax: | Home:<br>Cell: (915)929-1527<br>Work:<br>Fax: |

| Address | Email |
|---|---|
| 319 Valley Fair way<br>El Paso TX 79907 | salaiz.ep@gmail.com |

### Details of Service

<u>Investigation includes:</u>
- Initial Consultation
- Contact & Discussion with Tax Agencies regarding your Unique Situation
- Attempt for Temporary Protection from Collection Activity
- Transcripts of Reported Wage & Income
- Details of Balances and Years Owed
- Status of any Un-filed or Substitute Filed Returns (*SFR's*)
- Analysis of your Current Tax Situation by our Tax Experts
- Comprehensive Plan of Action by our Legal / Negotiations Team
- Proposed Options and Fees for any Additional Tax Services Available (*Proposal for Resolution services*)

### Terms and Conditions

**Services**. This Agreement is for <u>Tax Investigation (*Phase 1*) of your **Investigation- Fed, tax liabilities only**</u>.  Upon completion, there is <u>no commitment</u> for any further Resolution services (*Phase 2*).

**Service Time**. Services will not be rendered until the final payment or full retainer payment has been made. Once final payment is made investigation will be completed within 30 days.

**Payment**.  The fee for this Investigation is **non-refundable**. The fee will, however, be applied to any future resolution services should client retain Guardian Tax  additional Resolution services (*Phase 2*).

**Arbitration**.  Both parties agree to arbitrate any legal matters and forego their right to litigation.  Arbitration will take place in California. Prevailing party is entitled to attorney's fees plus cost of arbitration.

**Chargebacks.**  By submitting this form, the Client agrees that it will not undertake any action to cause a chargeback on its credit card relating to services provided by Guardian Tax or challenge any charge to the Clients credit card.

**Fee Schedule**:     Date: 08/02/2022                     Amount: $ 297.50


                      Date: 09/06/2022                     Amount: $ 297.50

**Payment Method**:
Payment Option:

(*check one*)          ☐ Check/ACH              ☐ Credit/Debit
Name on Account:  Eric D Salaiz_____ Account # or Card #:
Bank Name or Type of Card:  Master_____ Routing # or Expiration Date: 072025
Billing Address (*if different*): 319 Valley Fair way, , El Paso, TX 79907_____          CVV: 400

By signing here, I agree to be bound by the terms of this Agreement and authorize Guardian Tax Network to draft/run payment accordingly.
Date:  **7/12/2022**

| Client's Signature: | |
|---|---|
| **Eric Salaiz** | |

# Exhibit A

| Form **8821** | **Tax Information Authorization** | OMB No. 1545-1165 |
|---|---|---|

Form **8821**
(Rev. January 2021)
Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you. See instructions.

**OMB No. 1545-1165**
**For IRS Use Only**
Received by:
Name _____
Telephone _____
Function _____
Date _____

---

**1  Taxpayer information.** Taxpayer must sign and date this form on line 6.

| Taxpayer name and address | Taxpayer identification number(s) | |
|---|---|---|
| Eric D Salaiz<br>319 Valley Fair way<br>El Paso TX 79907 | Daytime telephone number<br>(915)929-1527 | Plan number (if applicable) |

**2  Designee(s).** If you wish to name more than two designees, attach a list to this form. **Check here if a list of additional designees is attached** ▶ ☐

| Name and address | | |
|---|---|---|
| **Guardian Tax**<br>2312 Park Ave # 609<br>Tustin CA 92782 | CAF No. | 0315-06702R |
| | PTIN | |
| | Telephone No. | (800)516-4650 |
| | Fax No. | (949)570-9959 |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ | |

| Name and address | | |
|---|---|---|
| **William Vo**<br>2312 Park Ave # 609<br>Tustin CA 92782 | CAF No. | 0314-24693R |
| | PTIN | P02396467 |
| | Telephone No. | (800)516-4650 |
| | Fax No. | (949)570-9959 |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ | |

**3  Tax information.** Each designee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☐ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number (1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| Income | 1040, 1041 | 2000-2023 | N/A |
| Civil Penalty | TFRP | Q1 - Q4 2000 - 2023 | N/A |
| Separate Assessments | 1040, 1041 | 2000-2023 | N/A |

**4  Specific use not recorded on the Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip line 5 . . . . . . . ▶ ☐

**5  Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior tax information authorizations on file unless you check the line 5 box and **attach a copy** of the tax information authorization(s) that you want to retain  . . . . . . . . . . . ▶ ☐
To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 5 instructions.

**6  Taxpayer signature.** If signed by a corporate officer, partner, guardian, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify that I have the legal authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ IF NOT COMPLETED, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.

▶ DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.

| Signature | Date |
|---|---|
| **Eric D Salaiz** | |
| Print Name | Title (if applicable) |

**For Privacy Act and Paperwork Reduction Act Notice, see the instructions.**          Cat. No. 11596P          Form **8821** (Rev. 01-2021)



Exhibit A

 Gmail                                                                    **Erik Salaiz <salaiz.ep@gmail.com>**

## Guardian Tax
3 messages

---

**Aaran Cleaver** <aaran@guardiantax.com>                                    Tue, Jul 12, 2022 at 12:18 PM
To: salaiz.ep@gmail.com

https://www.bbb.org/us/ca/irvine/profile/tax-enrolled-agent/guardian-tax-1126-1000090125


**Aaran Cleaver**
Senior Settlement Officer
(800)-516-4650 - Office Tel
www.guardiantax.com
https://goo.gl/maps/sgkyhnLEcA7fpeNT9



---

**Erik Salaiz** <salaiz.ep@gmail.com>                                        Tue, Jul 12, 2022 at 4:25 PM
To: Aaran Cleaver <aaran@guardiantax.com>

Thank You Aaran. I'm no longer interested.

Regards,
Erik Salaiz

[Quoted text hidden]

---

**Aaran Cleaver** <aaran@guardiantax.com>                                    Tue, Jul 12, 2022 at 4:27 PM
To: Erik Salaiz <salaiz.ep@gmail.com>

Ok, thanks for letting me know. We will inform the IRS.

Thank you for taking the time to speak with me.
[Quoted text hidden]

 Exhibit B